at all. Mr. Rock? Thank you, Your Honor. May it please the Court. Mr. Rock, I'm going to start. Of all of the First Amendment doctrines that we've briefed in this case, only a very narrow issue does the Court need to decide to resolve this appeal. And the question is whether the extraordinary procedural safeguards that the Supreme Court identified in Friedman v. Maryland need to apply to the university policy at issue in this case. The answer to that question is no, and that's the most straightforward way to resolve this case. In answering that question, it's critically important to remember that this is a facial constitutional challenge to the policy. This was originally brought with an as-applied claim as well, but that was abandoned by the plaintiff, and so we're here on the posture of just a facial constitutional challenge. And in that context, we look only to the text of the policy itself, and we look to what the words of the policy require. And here, the text of the policy only requires someone to provide notice to the university prior to engaging in the distribution of materials on campus. What about, though, that the same administrator that you need to give notice to actually decides where the individual actually hands out the leaflets or speaks? As to the location, you mean? Yeah. So that's a little bit more than a notification. There needs to be some sort of, not approval, but at least it needs to be made a decision by the dean of student life or whatever to choose where the location of the students happens. I take your point in that it says the area is deemed appropriate by that individual. I think that that would be certainly valid under any of this Court, certainly under Bowman and any of this Court's precedents as to time, place and manner restrictions. And I think it's also important, too, that the, and I take your point, but that portion of the policy was not challenged in any part of this proceeding. But I do think that that satisfies any of the tests that would be required for any reasonable time, place and manner restriction. Now, I think I agree with you, but the counterargument to that is that what if the dean says no place is appropriate for this, and then it becomes a prior restraint? That's fair. And if that, if those were the facts, and I think that would have to come at least in the first instance, I think that would be most appropriate in an as-applied context, right, where somebody went and they said there's nowhere that's appropriate. Certainly that's, those aren't the facts. There's been no dispute as to the location of this speech at issue, that was at issue here. And certainly nothing in the, in the policy itself dictates that there are any areas, certainly any outdoor areas of campus that have been deemed to be inappropriate, sort of per se, on the face of the policy itself. Does that matter, though? I mean, it hasn't been applied to that part of the, part of the statute, but does that matter in a facial challenge, or does that just lead us back to the standing issue? I think it leads back to the standing issue. Yeah, I think that's right. And I think if you look back to the Court's decision in Advantage Media, where the Court talked about the portions of the policy that can be challenged, right, in this context, I think the Court's holding there dictates that, that this wouldn't be subject to review here because it hasn't been applied, nor has it been threatened, nor is there any risk of it being applied to Mr. Hershey in any context. So I think it does bring, go back to that standing issue as well. Just to be clear, what, what specific portion of portions are at issue? Well, I think that's a great question, Your Honor, because I think the, our view is that all Mr. Hershey challenged is the notice provision. Now, to be sure, there's lots of, of discussion about the last bullet point in the policy, which is about the categories of prohibited speech, right? So, but I think it's important that remember, we remember the context in which Mr. Hershey brought this lawsuit. He wanted to come to campus and speak entirely unrestricted, right? I don't have to provide notice. I don't have to do anything. I can show up and hand out my materials. And that's a challenge to the notice provision, right? That we, we require that you provide notice before you engage in this. So in our view, once the district court concluded, as it had to do under Bowman, that a notice provision is constitutional and that this court, of course, would be bound by that same circuit precedent, in our view, everything else the court did became advisory. So all of the commentary about the additional provisions of, you know, whether the speech that's defamatory or incites violence, all the commentary about that is advisory because what Mr. Hershey came to redress was his injury that he, his alleged injury that he couldn't speak with, without providing notice or anything else. So in our view, once this court decides that a notice provision is constitutional, which it is under Bowman, that's all this court needs to do. Because, and the best example of You're saying there's no need to even reach the issues of whether the policy is content neutral? No, I don't believe there is, for two reasons. First, because the entire Freedman versus right, where there is a requirement that there be a preclearance of the activity before the speech occurs. And so I don't think, so if you decide that this does not fit that paradigm, I don't think you need to go any further on the Freedman analysis. But also, to go back to your Honor's question about the standing portion of this, once you make that decision that there, that a notice is, notice requirement is constitutional, nothing else that the court does could redress Mr. Hershey's injury that he can't speak without having to provide notice. And the best example of that is the injunction that the court, that the court entered here, right? Under, at least, at least under one option of the injunction, right? The university is to adopt a policy that says Mr. Hershey must come to the institution ahead of time. He must provide the actual materials to the university. They have a reasonable time to review them. Precedent indicates that that's at least three days. And then the university has to say, yes, you can come, or no, you can't. Counsel, I want to follow up sort of on the Chief's earlier question, which is, under the 2016 policy, and I understand you don't think they're standing on that. So let's leave standing aside for a second. Right, sure. Taken. Illegal speech or speech that violates any other university policy. Right. Now, illegal speech, I'm not quite sure what that is. But speech that violates any other university policy is a problem for the university. Because the fact of the matter is, I'll just give you a hypothetical. If the person coming to campus were speaking out and saying, don't go to class. You know, don't listen to your professors. They're jeopardizing society or whatever. That would be protected speech. And yet, it would probably violate university policy because you're telling students not to go to class. And there may be other examples of that as well. But my point is, don't you think if we get there, that that particular provision in the policy presents a problem? I think if you get there, that's the closest under the precedent to being something we'd have to look at in that context. I will say that as to this case in particular, again, I don't want to go down the standing route. I can, you know, understand that the Court understands where we're at on that point. But it's also important that no other university policy is in the record. So if the plaintiff wanted to make a facial constitutional challenge, an over-breath challenge, based on that portion of the policy, they had the burden to establish that there are unconstitutional applications of this. That either we're occurring, we're at risk of occurring, or whatever else. And I'll give you some examples. Like the university, of course, has a non-discrimination policy. And that prohibits speech that would be prohibited by potential speech, right? That would be prohibited by Title VII, Title IX, whatever it is. But unless they're coming to you with examples of policies that would run contrary to protected speech, I don't think the Court can just hypothesize on a facial constitutional challenge that there may be university policies out there that may present a problem here. So I certainly take your point that in the context of the traditional categories from U.S. v. Stevens or whatever other Supreme Court case law we want to look at, these other categories of traditionally unprotected speech are much more well, you know, obviously are much more well documented in the case law. But I don't think in the context of this facial constitutional challenge, if that's the over-breath challenge that they were wanting to make, they've done anything to prove that up here. It would be pure speculation for the Court to get there. So, the other point that I want to make on with respect to the application of Friedman here is the only way that the plaintiff tries to get around this problem of it being just a notice provision is to say, well, in my own personal experience, I was told by one of my lawyers that I was going to get a notice. And that's the evidence that the district court used, and that's the evidence that Mr. Hershey uses on appeal to try to get around this provision of it being merely notice. And I think that's a problem for three reasons. First of all, it turns every facet of a traditional facial challenge on its head. So, Mr. Hershey had the ability to bring an as-applied claim if he wanted to, and he abandoned it. And the courts repeatedly say, and this is chronicled in our reply brief at page 9, that you can't rely on simply your own situation in order to bring a facial challenge. And that's exactly what's happening here. This Court said it in Eisen in 2001. The Third Circuit has an extended discussion of this in Porter in 2020. And then, even going further, the traditional facial challenge requires, of course, that something be unconstitutional in every application. And even in the, what I'd call just a slightly lessened burden, right, that the Supreme Court has recognized in some First Amendment context, it's got to be substantial, it has to be unconstitutional in a substantial number of applications when judged in relation to the plainly legitimate sweep of the policy. And that simply isn't the case here. And if the Court looks to Washington State Grange, the Supreme Court case that talks about facial constitutional challenges, time and again the Supreme Court is directing courts not to issue facial invalidations when there's any other possible scenario. They're strong medicine. They're only appropriate in the And that's the plaintiff's own example. And that's not the stuff of facial constitutional challenges. But even looking to his own situation, what we have is one statement from a police officer nearly eight years ago at this point that Mr. Hershey needed, quote, permission. And so I don't think that that can be taken as any sort of a revision of the university's policy. And certainly they don't show any other applications where there's been any sort of permission that has been required whatsoever. But let's even go a step further. If the Court's willing to go there and to look at that, all the officer said was that you needed permission. It didn't say that you needed to submit your materials in advance or that there needed to be any sort of preclearance, that the court needed or, I'm sorry, that the school needed to evaluate the actual speech itself before you could be required to speak. And that's important because, especially in the facial challenge context, we're to give the policy every reasonable construction to make it constitutional before we find it unconstitutional, right? Well, suppose that he had gone up to the, you know, five minutes before the speech and dropped off a letter in the dean's office. Would that have been sufficient? Would that have placated the officer who stopped him? I think, I mean, under the text of the policy, yes. Yeah, I think that satisfies the text of the policy. Doesn't it seem like a little more was required since in the absence of the dean, he was basically not permitted to speak? In his, well, now It wasn't as if he could have just left something to seek permission. He was forbidden from speaking. Well, in his specific context, the way that the record played out or that the video played out was he was told that the vice president, the dean of students, wasn't available, but if he could wait, he could meet with him when he is available, right? So perhaps could that be more than a notice requirement, but you'd need the permission of the dean? Well, I don't think, I mean, in his particular context, I understand that that's the challenge that he raised, and possibly on an as-applied challenge, maybe you get there. But under the hypothetical that Judge Strass gave, if he says, here's my notice and I'm going to speak, and they take action against him after that, I think it's, I guess on an as-applied case, his case is probably stronger. I mean, I think all of this discussion occurs in sort of as-applied world as opposed to a facial constitutional challenge, which is what we're on here. But there certainly are hypotheticals that you could come up with that are a stronger as-applied challenge for Mr. Hershey and some that would, you could come up in the other direction. I'm just a little concerned, and I get it, that you're in, we're in an as-applied land, but the equivalent for the interpretation of the policy you're advancing would be if the police officer said, hey, wait, you can't speak right this very second. We just have to go up to the dean's office and drop a note, or we have to tell, you know, the assistant, the, you know, the administrative assistant or something to let the dean know that you're here. Right. But that's not what happened here. It appears that he got, you know, he got a trespass notice and he couldn't speak anymore. Right. And, yeah, and again, in an as-applied world, I, you know, this is a, this is a different, and the record, and that's the other problem, is because this was a facial constitutional challenge, right, the record wasn't developed as an as-applied challenge. So we don't know, the dean of students wasn't deposed in this case. Like, we don't, we don't have what we would need for an as-applied record here because it was just a facial constitutional challenge. But, you know, the other point that's in Bowman are the interests that the court identified there as to why these notice provisions are important. Right. So the, so the university can advance its educational mission, but also so that it can provide safety and security and notice to its security apparatus of what's going on. Right. Because if we, like, take the hypothetical that your honor gave. In this situation, had Mr. Hershey provided notice as the policy required beforehand, and the university received a call that somebody was distributing materials on campus, there's probably not even any sort of law enforcement interaction whatsoever because they know about it. Right. And so those are the type of interests that led this court in Bowman to approve exactly this type of notice requirement. It's constitutional here. The district court erred in holding otherwise, and we'd ask this court to reverse on that basis. And if there are any further questions, I'd reserve the balance of my time. Do you wish to address the injunctive relief? Excuse me? Did you wish to address the injunctive relief? The, oh, the specificity of the injunctive relief? Yes. As an alternative basis, I think if the court, if the court decides that this is a notice provision under Freedman, that should be reversed in its entirety and judgment should be entered in favor of the university. I do think in the alternative, as we've discussed in the briefing, the injunction here doesn't do much more than, say, comply with the law. And especially under the first option that the district court gave, I'm not sure how you revise the policy to be a quote unquote Mr. Wren, if you'll just hold on a moment. Madam Clerk, would you stop the clock and reset? I think we were using up some of the rebuttal time there. And reset for Mr. Wren. This doesn't happen every day. It happens. Mr. Wren, when you're prepared, please proceed. May it please the Court, my name is Keith Wren. I represent the plaintiff, Richard Hershey, in this case. I would like to address what my opposing counsel last talked about, or almost last talked about, about this provision, this policy being a mere notice requirement. Of course, this is a facial challenge to the policy. However, I think that it is important to look at the context in which this policy was enforced in this particular case because it shows how the university interprets its own policy and how it has in the past and how it is indicated that it will in the future. They now plan that it is a mere notice requirement. But as we know from the video, Officer Williams, it is in the record that he is trained on the policies every year. That is not how he enforced it. He enforced it as a prior restraint on speech. And that indicates that the plain the past had interpreted it. If it is just a notice requirement, why wouldn't it have been sufficient for the notice just to have been given to Officer Williams and Mr. Hershey to say, well, you see here that I am handing out the literature. You see that I am not doing anything illegal. Go tell the administrator when she gets back that I am here. On these facts, I think you make a really strong point that it is being interpreted as something different than a notice provision. But my understanding is that there is no as applied challenge. In a facial challenge, we just look at the interpretation of the policy and we don't consider the individual facts of how it is applied to someone. Right. But what is important about this is that it indicates that if we look at the plain language of the statute or the policy and the plain language allows what Officer Williams did, then what we have is a policy that is so vague that it is then now subject to the whims and the prejudices of whoever is applying the policy. That is what leads you to an as applied challenge is the point. No. I don't think so. Because when you look at the policy, it says first that you have to prior to handing out your literature, it says you have to go and contact the administrator. And then the administrator then determines whether or not your literature that you want to be distributed will be unrestricted and will be unrestricted. And so then if it is simply a notice requirement, why does the policy contain all of this content based language about what determines whether or not the distribution of literature will be unrestricted? So my point is that if the university, if tomorrow or next week or next year we have a different administrator and they read this policy So how, what would it have looked like to be permissible for there to be some notice provision that wouldn't run afoul of facial challenge? Well, I think essentially they said you can come here and say, distribute whatever information you want, talk about whatever you want, just send us notice what's in it. Actually it says the vice president of student affairs or that person's designee is notified prior to the distribution. Just let us know what it is you're going to pass out. Well, first off, you need to take out all of the content based language. And second, there's the additional language contained in the policy that says that the administrator will then determine where you can pass out the literature. And I think that's more than just an issue of standing. Because what if they say, well, okay, you've given us notice and now you can go on the very far corner of campus where nobody ever goes and hand out your literature. So you've taken this, quote, notice requirement and it's clear based on this particular clause in there that says that the administrator determines where you can hand out the language and it's not merely a notice requirement. Let me ask you this. So the doctrine of constitutional avoidance, we apply that in overbreadth challenges. And the reason why I think that's important is there's two ways to read this particular policy. One is potentially, potentially the way you're suggesting, that it's a permission requirement. I don't think that's a better interpretation, but it is an interpretation of the policy. The other is it's a mere notification requirement. So why shouldn't we use the doctrine of constitutional avoidance and just interpret it as a notification provision, which may well be the better interpretation of the policy? Well, as I've set out in my brief, the case on that is the Hines case. And even as a notice requirement, this is an unconstitutional policy, facially unconstitutional. The Hines case is very clear that says if you're going to have a notice requirement to allow speech, I think that case had to do with door-to-door solicitations. And it said that you had to contact the police chief and give him notice that you were going to do this. Well, the Supreme Court says that if you're going to have a notice requirement, it has to be, the parameters of that has to be so clear that the action of approving or disapproving the notice has to be virtually ministerial. And that is not at all what is in the policy at issue in this case. It doesn't say what constitutes notice. It doesn't say how far in advance the notice has to be given. It doesn't say how long the notice has to be given for. I mean, if it's merely a notice requirement, my client has satisfied that requirement from September the 15th, 2015 until the date of his death. Is that what the university wants? Is that what the university requires? Well, we don't know. Clearly, under the Hines case, this policy still fails as a mere notice requirement. The university has consistently tried to say, well, this is not a content-based regulation. Let me just, I was thinking about your last statement. I just want to follow up on it. If it is a notice requirement, couldn't it be a notice requirement in the context of a time, place, and manner statute? And the reason why I say that is because the notice seems to be linked to where the speech takes place. In other words, the same administrator who is notified gets to make the call about, oh, this is an appropriate place or that's an appropriate place. And so wouldn't it be constitutional because it's tied up in a time, place, and manner provision? Well, I don't think it's quite that simple. And the reason is that time, place, and manner restrictions are allowed, but only if they are not content-based. Okay. And so, again, we get back to this situation where the policy has all this content-based requirements in it. And so once you determine that this is a content-based policy, which it is, three-fourths of the arguments that the university has made go away. Bowman v. White no longer applies. The Thomas v. Chicago Park District case no longer applies. Those cases were very clear that those were all not content-based time, place, and manner restrictions. Bowman v. White, the University of Arkansas case, talked about how, you know, you couldn't come on campus to speak during dead days. You couldn't come on campus more than five days a semester, which I think this Court ultimately found to be unconstitutional. But it didn't have to do anything with the content of the speech. Same is true in the Thomas v. Chicago Park District case. That case, it had to do with use of the park for, I think, groups of 50 or larger. And if there was going to be 50 or larger, then no matter what you were there for, to hold a parade, a political demonstration, whatever, these rules applied. It had nothing to do with the content. Well, on content-based, are you referring to the other provision that talks about the fact that it can't be defamation or speech that's insightful or true threats or anything like that? Absolutely. How is that different from stating what the law is? I'm sorry, I don't understand. How is that different from an attempt to state that that's unprotected speech that wouldn't be permitted? Well, I think that the important point there is that, yes, the government can regulate unprotected speech, absolutely. But you can't have a prior restraint on unprotected speech that is content-based, and it doesn't matter what kind of speech it is. The Friedman case itself, the seminal case on this issue, was a case that regulated movies and it wanted to regulate them based on the unprotected nature of those movies, that they were obscenity or that they tended to incite crime. So that's just a non-issue. So I want to understand this because I didn't understand this when I read the briefs completely, which is I'm now hearing you say that the notification provision and that other provision dealing with the content, that those are related, that you agree that it could be stating the law absent the notice provision, but with the notice provision, the way you read it, it's a prior restraint. And if it's a prior restraint, even if the speech is unprotected, it can't be regulated in the way it is. Am I understanding your argument right? That's absolutely correct. That's the holding of Friedman, that if they want to do that, then they have to have the procedural safeguards put in place by Friedman. And if they don't, if I think one of the arguments is, well, you know, it's very difficult to do that because Friedman says you have to have expeditious judicial review and we don't have any control over the courts. Well, if that's the case, then you just need to take that out of your policy and you can't have one. Or the university could go to the Missouri legislature or the judiciary and say, hey, we need a special procedure because we want to have a prior restraint on speech. And they can do that. But to simply say that if it's unprotected speech, then, you know, we're good, that's simply a non-argument. And additionally, the subsequent policy that was enacted in June of 2016 adds to categories of speech that are not unprotected speech. It says that speech will not be allowed or distribution of literature will not be allowed on campus if it is, quote, illegal, with no definition of what that means. And I think that the court in the United States Supreme Court in a United States v. Stevens addressed that very language in somewhat of a different context, but it talked about how problematic and vague that language is. Where is it illegal? Is it illegal in Missouri? Is it, you know, if it could be illegal anywhere in the world and still not be allowed on campus, which of course gets back to the facial challenge. By reading that statute, if it's illegal in North Korea, then an administrator can say, well, you're not going to do it here. I think that's an important point, that the policies are materially different, and the 2016 policy potentially covers protected speech. But what I'm struggling with is the 2016 policy has never been applied to your client, at least that part of it. And so what do we do with that? Isn't there a standing problem just with regard to that particular part of it? No, Your Honor, because as you know, in facial challenges under the First Amendment, as long as my client can show that he has an injury in fact, which in this particular case he does, my client, it is in the record, will go all over the country and pass out vegan literature if he's allowed to do so. I think at the time of the briefing, he had passed out something like 900,000 plus vegan leaflets. Now, when you have a policy such as the policy that's in place here, it has a chilling effect on speech. So for in his example, he hasn't been back to the university since this incident occurred. And if you take the policy as it existed in 2015, and then the policy that now exists as of 2016 is even more restrictive. So you can't say that, well, it's a moot issue now, that the old policy was applied, or maybe you had standing to challenge the old policy, but you don't have standing to challenge the new policy. That's not the case, because the current policy is even more restrictive. And so in this context, he can definitely show that he himself has had a chilling effect on his speech, and that potentially others may also have a chilling effect on their speech. Do you think he has to show a threat of enforcement with regard to the 2016 regulation or policy? He clearly has shown that it was actually enforced. The 2015 was enforced against him. But I'm just wondering what the showing is that he needs to make with regard to the 2016 policy is. And the case on that is, I think, Animal Fund versus Vought. It's a fairly recent case, a 2021 case. A case that arose out of Arkansas is one of these statutes that said that you can't take a concealed camera onto a farm or a processing plant or something like that. And the plants in that case had never actually done it. But they said that, but for this statute, they would have hired people to go get cameras and get hired by these processors and that after all these hoops had been jumped through, then they would have had a chilling effect on their speech. Well, the district court in that case said, well, that's just speculation. And this court said, no, it's not. Because you can look to the past. You can look to the past and show that, like for example in this case, the university's persistent defense of their policy. You can look to the past and see what happened with Officer Williams and my client and go, well, it is not speculation to say that the university would do this again. And that is exactly the case here. This policy is still on the books and the university has persistently defended it. So it is not mere speculation to say that the 2016 policy would be enforced in much the same manner as the 2015 policy was. But you said there has been no effort to return. Well, certainly not as of the time of the briefing in this case. I mean, if something has changed, I don't know. But in the five or six years in that space, certainly he had not. Because the trespass warning was still in effect until the district court declared it be null and void. Which gets to the, I would like to just briefly address the injunctive relief. The university says that my client's problems are not regressible by injunctive relief, which is clearly not the case. Number one, the obvious thing is that if the policy is declared to be unconstitutional, then the threat of arrest against him goes away. Because there is no basis for the trespass warning anymore. But more importantly in the future, as I alluded to before, there is evidence in the record that my client will go anywhere that he can to hand out these vegan leaflets. And so if the policy goes away and he no longer has that chilling effect on his speech, then he will return to the university to hand out his leaflets. And therefore, his injuries are regressible by the injunctive relief. I only just want to add one thing. The hybrid approach that the district court took in rendering its decision was unique. It's not based on any precedent. The district court found that the policy was not, quote, purely content neutral, which means I think that it's content based. And once that is found, as the district court did, and I think even as the university admitted, I think in page 20 of their response brief, that the policy is content based, then three-fourths of the arguments that were made really, in this case, no longer apply. And if there are no more questions, I will stand down. Thank you, Mr. Renn. Thank you. Mr. Robb, would you address that last point the counsel made regarding the court's characterization of the policy as not being strictly content neutral? Was that enough for it to be declared content neutral, or was that enough to really call that into question as to whether or not? I think the best reading of the district court, I mean, the district court opined on this in three different opinions, and I think several times says that it's content neutral. And I think that that's the best reading of the district court's opinion here. And admittedly, the Supreme Court's jurisprudence in content based and content neutral distinctions is muddied, and especially when you're talking about categories of unprotected speech. I think the best reading of the Supreme Court's case law right now, after City of Austin, is that the unprotected categories of speech, or speech that don't deserve a higher level, a heightened level of scrutiny, is best characterized as content neutral. But certainly the court has used various language throughout RAV and Reed and City of Austin and how it talks about those concepts. Again, we think the best reading of it, post City of Austin, is that those are content neutral restrictions. And if this court gets there, we think that's the right outcome. But again, going back to the point of constitutional avoidance, we think that's a great reason that this court should decide it based on the fact that this is a notice requirement and nothing more, because after the court makes that decision, its determination in this case is controlled by Bowman. Because Bowman says that a notice requirement, and take it, too, that Bowman was a more significant restriction than we have here. Bowman was, you have to provide three days of advance notice, and we have to approve it in advance. And this court said that that's constitutional. What if the policy said something a little different? I want to test your answer to the Chief. Suppose it said, if you say anything related to our academic mission, you need to notify the dean in advance. But if you want to come and hand out flyers for a commercial purpose, that's completely fine. So it's directly content-based. Yeah. Would that present a problem? I do think that presents a problem. Probably under Reed and RAV really is the best discussion of that, that even if it were protected or, candidly, even if it were in an unprotected category, you can't use those categories to discriminate on certain topics, right? So you can't say, even if it's a true threat, we apply true threats only to one type of speech but not to another type of speech, right? So I do think that there could be policies like that, that if you had a heightened level of regulation for certain topics, that certainly could present a problem. So then the question becomes, what's different about some of those categories other than the fact that they're unprotected? Because true threat, a threat is a content-based restriction on speech, potentially. But it's unprotected. And I understand the Supreme Court may treat that differently. Right. But that's putting a lot on sort of the unprotected category, you know, issue. Right. And again, the Court has dealt with this both ways, right? Sometimes they say it's not content-based at all, it's content-neutral, like City of Austin. Yeah, right. Sometimes they just say that it doesn't receive any constitutional protection. What the key point is, if the Court gets to it here, what we're deciding is whether Thomas controls, right? So whether the later decision in Thomas that says, Friedman doesn't apply to content-neutral policies, whether that applies in this case. And I think what the key takeaway from Thomas is, is we aren't going to apply those heightened procedural requirements from Friedman to categories of speech that don't themselves have higher levels of protection, right? So regardless of how this Court wants to characterize it, it doesn't make sense that we would never provide protection to these categories of speech. But then we would say, oh, in this context, we give them heightened procedural requirements. How do you avoid content analysis for the violate any other university policy language? It seems, how would someone prior to speaking know every other university policy? Again, as I mentioned to Judge Strass, I think that's the closest to a content inquiry. But I do think, and I'll answer your question directly, the standing portion is very important here, right? Because not only was that policy not adopted until after he spoke, but I think the Court is exactly right that he's got to demonstrate some sort of risk of application in some context, and no one has ever, ever suggested that any of his speech would violate any policy, any of his speech would violate any of these categories, or that he was threatened otherwise. So here, on a facial constitutional challenge, again, if he was going to prove up a facial constitutional violation and demonstrate that there are policies at the university that run afoul of that, then that was his burden on the facial challenge, and that was not that. I see no additional questions. Thank you, Mr. Roth. Thank you. The Court appreciates. Thank you also, Mr. Rand. The Court appreciates both counsel's participation and argument before the Court this morning. It's been helpful. We'll continue to study the case and render decision in due course. Thank you, Your Honor. Counsel may be excused.